IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

STEVEN L. ROBERTS,

      Plaintiff,

v.                                           CASE NO. 2:11-cv-0196

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The plaintiff (hereinafter referred to as "Claimant") protectively filed an application for DIB on November 18, 2005, alleging disability as of February 25, 2005, due to back pain, skin problems, asbestos exposure, Gulf War syndrome, migraine headaches, lower spine injury, constant joint pain, high blood pressure, high cholesterol, depression and anxiety. (Tr. at 189-91, 195-96.) The claim was denied initially and upon reconsideration. (Tr. at 68-69, 98-101.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). The first hearing was held on April 3, 2008, before the Honorable Dores D. McDonnell, Sr. (Tr. at 574-91.) By decision dated April 24, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 70-84.) The Appeals Council remanded the case, and a second hearing was held on March 23, 2010, before the Honorable Charlie

Andrus.  (Tr. 592-621.)  By decision dated May 4, 2010, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-27.)  The ALJ's decision became the final decision of the Commissioner on February 14, 2011, when the Appeals Council denied Claimant's request for review.  (Tr. at 7-9.)  On March 28, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

This is not the first application for benefits filed by Claimant.  On June 25, 2004, an ALJ found that Claimant was disabled for a closed period from June 28, 1999 through August 10, 2003, but not thereafter.  (Tr. at 66.)  That decision became final on February 25, 2005.  (Tr. at 16.)  The ALJ who considered Claimant's present application did not reopen the prior application.  (Tr. at 16.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.

2

Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since December 25, 2005, his alleged onset date. (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of post-traumatic stress disorder and degenerative joint disease.  (Tr. at 19.)  At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by exertional and nonexertional limitations.  (Tr. at 21.)  As a result, Claimant can not return to his past relevant work as a swimming instructor, pool maintenance worker and lifeguard.  (Tr. at 25.)  After considering the testimony of a vocational expert, the ALJ concluded that Claimant could perform the light and sedentary jobs of light office helper,

light price marker, list assembler, sedentary routing clerk, sedentary surveillance monitor, and sedentary grader/sorter. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 49.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-seven years old at the time of the second administrative hearing. (Tr. at 596.) Claimant has a bachelor of arts degree from Marshall University. (Tr. at 596.) He served in the United States Navy from August, 1989 to August, 1993, and was honorably discharged. (Tr. at 536.) He did not have combat experience. Id. During his service, in

May, 1990, he was onboard a ship off the coast of North Carolina.  A fire broke out in the forward boiler room and burned for 23 hours, resulting in one death and 18 sailors injured, some severely.   (Tr. at 538, 541, 543.)  Claimant testified that he was trapped below deck and breathed smoke with asbestos for several minutes.  (Tr. at 581, 605.)

Claimant's Challenges to the Commissioner's Decision

Claimant makes two main arguments.   First, Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant's impairments did not meet or equal the Listing of Impairments in Appendix 1. (Pl.'s Br. at 2.)  Second, he contends that the ALJ's conclusion that there are a significant number of jobs in the national economy which Claimant can perform, is not supported by substantial evidence.  Id.  Claimant also points out that he has a 70% disability award from the Department of Veterans Affairs, that he was determined to be disabled for a closed period, and his impairments have only worsened, not improved.  Id. at 1.

The Commissioner responds that the prior finding of disability and the VA award have no bearing on the ALJ's decision as to whether Claimant met the Listings criteria or whether he can perform substantial gainful activity.   (Def.'s Br. at 16-18.)   The Commissioner further argues that substantial evidence supports the decision that Claimant does not meet or equal a Listing, and that he is capable of performing substantial gainful activity.  Id.

The Listings - Physical

Claimant does not specify which Listing he claims to meet.  The ALJ's decision which granted benefits for the closed period from June 28, 1999 to August 10, 2003 (ALJ Foley), is not in the record, so the court is unable to determine the basis for the decision.  ALJ

McDonnell did not specify the Listings which were considered, other than 12.00C. (Tr. at 80.) ALJ Andrus's decision, the only truly relevant one, addressed Listings 1.04, Disorders of the Spine, 1.03, Reconstructive surgery, and 12.06, Anxiety Related Disorders. (Tr. at 19-20.)

Listing 1.04, Disorders of the spine, lists examples of impairments: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, resulting in compromise of a nerve root . . . or the spinal cord." On August 13, 2007, an MRI of Claimant's lumbar spine without contrast showed the following: "At the L1-2 level, there is small right paracentral disc herniation. There is slight compression on the anterior lateral thecal sac. At L5-S1, there is desiccation of the intervertebral disc, and mild bulge or protrusion of the annulus in a central and left paramedian location. No nerve root compression is seen." (Tr. at 533.) In order to meet the Listing, a claimant must *also* show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, . . .; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

On June 25, 2009, Claimant underwent a consultative physical examination by Kip Beard, M.D. Dr. Beard noted that Claimant's "gait seemed normal without limp." (Tr. at 557.) His other findings were as follows:

> GENERAL: He could stand unassisted. He could arise from a seat and step up and down from the examination table without difficulty. The claimant

6

appears comfortable while seated and mildly uncomfortable while supine with some mild back pain. * * *

CERVICAL SPINE: Examination of the cervical spine reveals no spinous process or muscular tenderness.  There is no evidence of paravertebral muscular spasm.  Evaluation of range of motion revealed no limitations. * * *

LUMBOSACRAL SPINE/HIPS: Examination of the dorsolumbar spine reveals some mild pain with forward bending with muscular tenderness and no spasm.  Flexion is 75 with normal range of motion otherwise.  The claimant is able to stand on one leg at a time without difficulty.  There is no leg length discrepancy.  The seated straight leg-raising test is to 90 degrees without complaints.  Supine is 75 degrees with some mild back bilaterally with no radicular complaints.  Hips are without pain or tenderness, with normal range of motion.

(Tr. at 557-59.)  Dr. Beard's impression was "chronic thoracolumbar strain." (Tr. at 560.)

Dr. Beard completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), indicating that Claimant could continuously lift up to 10 pounds, frequently lift up to 20 pounds, and occasionally lift up to 100 pounds. (Tr. at 561.)  In other words, Dr. Beard concluded that Claimant could perform a wide range of activities at the light exertional level.

Claimant testified at the administrative hearings that from time to time his back "goes out" and he is bed-ridden for two or three days, but otherwise his difficulties with his back are "not as much." (Tr. at 583, 599, 611.)  The extensive records from the Veterans Affairs Medical Center are consistent with the MRI results and the report of the consultative evaluation.

The court finds that Claimant has failed to produce objective medical evidence that he meets the criteria in Listing 1.04, and the Commissioner's decision on that point is supported by substantial evidence.

Listing 1.03 addresses the inability to return to effective ambulation after surgery.

This listing is irrelevant; Claimant has not undergone surgery.

<u>The Listings - Mental</u>

Listing 12.06 pertains to anxiety disorders. A claimant must show that "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms." The level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. The ALJ found that Claimant's symptoms meet the A criteria. (Tr. at 20.) The court will consider whether the Commissioner's decision that Claimant does not meet the B or C criteria is supported by substantial evidence.

It is plain that Claimant does not meet the C criterion which is "complete inability to function independently outside the area of one's home." While Claimant prefers to spend most of the day by himself, he has participated in a variety of programs at the Veterans Medical Center and is clearly able to function independently.

The B criteria require two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that Claimant has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, etc., and 1-2 episodes of decompensation. (Tr. at 20.) "Repeated episodes of decompensation, each of extended duration" is defined by the regulations as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Appendix 1, § 12.00A.4.

On June 9, 2009, Claimant underwent a consultative examination by licensed

8

psychologist Kristen M. Blanks.  After administering various tests and conducting an interview, Ms. Blanks diagnosed Claimant as having posttraumatic stress disorder (Axis I) based on his report of recurrent nightmares and flashbacks of the ship fire.  (Tr. at 551.) Her assessment reads as follows:

> Based on mental status data, immediate memory is within normal limits, recent memory is moderately deficient, and remote memory is within normal limits.   Attention and concentration are within normal limits.   Task persistence and pace were within normal limits based on clinical observation during the interview.  Social functioning is unimpaired based on observed behavior during the interview; however, he is reporting a moderate to severe impairment due to irritability.

Id. Ms. Blanks noted Claimant's unkempt appearance and poor grooming and hygiene.  (Tr. at 549.)

The evidence includes extensive records from the Veterans Medical Center.  On April 30, 2007, Claimant was diagnosed on Axis I as having anxiety, not otherwise specified.  (Tr. at 407, 411, 441.)  The examiner noted Claimant was unkempt (messy) and clean.  (Tr. at 409, 440.)  Claimant was adjudged to be able to make reasonable life decisions.  (Tr. at 411, 441.)   On June 6, 2007, Claimant was slightly disheveled, calm, cooperative, with exacerbation of his anxiety.  (Tr. at 430.)  On July 3, 2007, Claimant was experiencing stress, and had an increase in psychomotor activity, with abnormal movements and inappropriate thought content.  (Tr. at 419.)  On December 1, 2007, Claimant was evaluated as having mild to moderate anxiety and post-traumatic stress disorder.  (Tr. at 536, 541.)

The court finds that the decision that Claimant does not meet the criteria of Listing 12.06 is supported by substantial evidence.  There is no evidence from a medical source which suggests that Claimant meets any of the B criteria.  The court has further considered the ALJ's conclusion that the impairments, considered together, do not meet or equal a

9

Listing; the court finds that decision also to be supported by substantial evidence.

Ability to Perform Substantial Gainful Activity

Claimant argues that his physical and mental impairments have worsened, as shown by an increase in the percentage of his disability rating by the Department of Veterans Affairs, and that his efforts to perform work have been unsuccessful. (Pl.'s Br. at 3.) On this basis, Claimant contends that he should be awarded benefits. Id. at 4.

The Commissioner responds that even the records of the Department of Veterans Affairs do not indicate that Claimant cannot perform substantial gainful activity. (Def.'s Br. at 19.) Moreover, the ALJ is not bound by the VA's disability determination, and must apply Social Security law and regulations. Id.

The VA decision dated January 25, 2008, granted a 30% service connection for post traumatic stress disorder ("PTSD"). (Tr. at 173.)

> An evaluation of 30 percent is granted whenever there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

(Tr. at 174.) The VA decision notes that Claimant's PTSD "does not cause total occupational and social impairment or reduced reliability and productivity." (Tr. at 175.) A VA examiner assigned Claimant a Global Assessment of Functioning (GAF) score of 60, which indicates a "moderate" impairment in social or occupational functioning. (Tr. at 175.) The VA decision denied his claim for entitlement to individual unemployability. (Tr. at 178-79.)

The ALJ adopted the limitations found by Ms. Blanks. (Tr. at 25.) These restrictions

are PTSD and moderately deficient recent memory. (Tr. at 551.)  She noted that Claimant reported that he is irritable and snappy, but she observed during her evaluation that his social functioning was unimpaired.  (Tr. at 551.)  The ALJ considered Ms. Blanks's descriptions of Claimant's limitations and the testimony of the vocational expert and concluded that Claimant is capable of performing substantial gainful activity.  The court finds that this decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision that Claimant is not "disabled" within the meaning of the Social Security Act is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Commissioner's decision is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk is directed to transmit copies of this Memorandum Opinion to all counsel of record.

**ENTER**: May 7, 2012

Mary E. Stanley
United States Magistrate Judge